**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| P&P Construction Group, LLC, et al., | § Case No. 23-90292 |
| | § |
| Debtors. | § Jointly Administered |

**DEBTORS' EMERGENCY MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
CONTINUED USE OF EXISTING CASH MANAGEMENT
SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK
ACCOUNTS, CHECKS, AND BUSINESS FORMS, (II)
AUTHORIZING CONTINUATION
OF EXISTING DEPOSIT PRACTICES, (III) APPROVING THE
CONTINUATION OF INTERCOMPANY TRANSACTIONS,
AND (IV) GRANTING ADMINISTRATIVE EXPENSE STATUS
TO CERTAIN POSTPETITION INTERCOMPANY CLAIMS**

> **Emergency relief has been requested.  Relief is requested not later than April 17, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 17, 2023, at 11:00 a.m. (prevailing Central Time).  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name, complete the required fields and click "Submit" to complete the appearance.**

The above-captioned debtors[1] and debtors in possession (collectively, the "***Debtors***") respectfully state the following in support of this emergency motion (the "***Motion***"):

## I.
## RELIEF REQUESTED

1. By this Motion, the Debtors request entry of interim and final orders attached hereto (respectfully, the "***Interim Order***" and the "***Final Order***")

    (a) authorizing, but not directing, the Debtors to continue to maintain and use their existing Cash Management System (as defined below), including maintenance of their existing bank accounts, checks, and business forms;

    (b) authorizing, but not directing, the Debtors to continue to maintain and use their existing deposit practices and granting the Debtors an extension of time for a period of 45 days from the Petition Date (i.e., through and including May 27, 2023), within which to comply with the requirements of § 345(b) to the extent that such requirements are inconsistent with the Debtors' existing deposit practices;

    (c) authorizing the Debtors to open and close bank accounts in the ordinary course of business;

    (d) authorizing the Banks (as defined herein) with which the Debtors maintain their accounts to continue to maintain, service, and administer such accounts; and

    (e) authorizing the Debtors to maintain the Corporate Credit Card Program (as defined below).

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are P&P Construction Group, LLC (4071), and BRH-Garver Construction, LLC (8315). The Debtors' address is 7600 S. Santa Fe, Building D, Houston, TX 77061.

2. Additionally, the Debtors request that the Court schedule a final hearing 21 days after the first day hearing, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion. 28 U.S.C. §§ 157, 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein is 11 U.S.C. §§ 105(a), 345, 363, 503(b), and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),[2] rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

## III.
## BACKGROUND

5. BRH-Garver Construction, LLC ("**Garver**") is a civil contractor headquartered in Houston, Texas, focused on micro-tunneling (or trenchless excavation) and related infrastructure projects to public and private projects as well as related service competencies to other areas of site/civil construction. Garver owns and operates a large fleet of equipment and has an in-house fabrication facility that manufactures tools and equipment for specialty projects.

6. The Garver business was historically a profitable one. In 2021, for example, the audited financials of the business showed that it generated approximately $4 million in net income and more than $6 million in EBITDA on revenues of $61 million.

---

[2] Unless otherwise noted, section (§) references are to the Bankruptcy Code.

7. In 2022, however, the Debtors sustained significant losses on two projects, one of which was bonded by the Hartford Fire Insurance Company ("*Hartford*"). By February 2023, Hartford had issued "hold funds" letters to the counterparties under certain of the Debtors' job contracts requesting that the respective owners release no further contract balances to the Debtors without Hartford's prior written consent.

8. Shortly thereafter, the Debtors' other bonding company, Markel Insurance Company ("*Markel*," and collectively with Hartford, the "*Sureties*") issued "hold funds" letters of its own, and the Debtors' prepetition senior secured lender, Stellar Bancorp Inc. ("*Stellar*"), accelerated the Debtors' prepetition secured loans and sent letters to project owners directing them to remit any further progress payments or retainage directly to the Prepetition Lender. Shortly thereafter, the Prepetition Lender froze the Debtors' bank accounts.

9. The collective effect of these actions was to deprive the Debtors of access to any cash whatsoever except for some limited amounts that the Sureties funded for the weeks of April 3 and April 10, 2023 for payroll and certain vendor payments. Unable to access any of the funds that would ordinarily be available to fund the Debtors' ordinary operating expenses, including critical items like payroll and utilities, on April 12, 2023 (the "*Petition Date*"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.[3] The Debtors continue to manage and operate their businesses as a debtors-in-possession pursuant to §§ 1107 and 1108.

10. A detailed description of the Debtors' business, capital structure, and events leading to these chapter 11 cases is fully set forth in the *Declaration of Jeffrey Anapolsky* (the "*Anapolsky Declaration*") and is incorporated herein by reference.

---

[3] Unless otherwise noted, section (§) references are to the Bankruptcy Code.

# IV.
# THE CASH MANAGEMENT SYSTEM

**A.    The Debtors' Cash Management System and the Bank Accounts.**

11.    The Debtors' primary source of cash is revenues generated from the construction of pipelines for water, sewage, and drainage systems for public municipalities and other customers. The Debtors oversee the collection, disbursement, and movement of cash from these operations through a cash management system (the "***Cash Management System***") primarily comprising three bank accounts (the "***Bank Accounts***") maintained at Stellar, as successor by merger to CommunityBank of Texas, N.A., and three bank accounts maintained at JPMorgan Chase Bank, N.A. ("***Chase***", and collectively with Stellar the "***Banks***").

| **General Operating Account**<br><br>*SB-4038* | This account is the Debtors' main operating account.<br><br>Petition Date Balance: $381,562.97 |
|---|---|
| **Payroll Account**<br><br>*SB-4011* | This account is used as the Debtors' payroll account. The Debtors payroll amounts are transferred from the general operating account to the payroll account and immediately transferred to the Debtors payroll provider.<br><br>Petition Date Balance: $5,123.76 |
| **Laredo Account**<br><br>*SB-3037* | This Account was established on or about March 20, 2023 to exclusively receive certain revenues, receipts, and disbursements relating solely to the Debtors' Laredo, Texas project that is expected to commence in May 2023.<br><br>Petition Date Balance: $0.00 |
| **Old Operating Account**<br><br>*Chase-0966* | This account is the Debtors old operating account and is not actively used by the Debtors.<br><br>Petition Date Balance: $96,919.27 |
| **Old Payroll Account**<br><br>*Chase-1235* | This account is the Debtors old payroll account prior to opening the Stellar Payroll Account. This account is no longer utilized by the Debtors, and the Debtors are working to close this account.<br><br>Petition Date Balance: $8,127.39 |
| **Savings Account**<br><br>*Chase-5071* | This account is still utilized by the Debtors as a savings account.<br><br>Petition Date Balance: $4,784.83 |

12. In addition, the Debtors recently closed one bank account at Stellar which was opened on March 8, 2023. The now-closed Stellar bank

account was opened following a day-long mediation involving the Debtors, Stellar, Hartford and Markel. The bank account was originally intended as a holding account for proceeds received from certain bonded contracts on and after that date. Under an informal agreement reached at the conclusion of that mediation, such proceeds were to be disbursed by the Debtors to pay for operating expenses only upon approval by the Sureties. In light of the protections and restrictions that the Bankruptcy Code imposes on the use of Cash Collateral, the Debtors closed the bank account on March 28, 2023.

13. The Debtors' Cash Management System is critical to the Debtors' operations as it enables the Debtors to, among other things, (i) monitor cash receipts and ensure timely receipt of payment of necessary disbursements, and (ii) ensure accurate cash forecasting and reporting.

### *Cash Collections*

14. As noted above, the Debtors' revenues (and their expected future revenues) are primarily generated through their micro-tunneling services to public and private projects. Cash from these activities in the form of progress payments and retainage enters the Cash Management System and is deposited into the General Operating Account where the funds are held pending disbursement for operating and other expenses. All cash flows through the Debtors' General Operating Account.

### *Cash Disbursements*

15. The Debtors' disbursements are generally made from the General Operating Account. Additionally, certain funds are transferred on a weekly basis to the Payroll Account and immediately transferred to the Debtors payroll provider to fund the Debtors' current payroll obligations. The Payroll Account is a pass-through account used solely to fund weekly payroll.

*Bank Fees*

16.     The Debtors pay fees and expenses to the Bank related to the costs of administering the Bank Accounts (the "***Bank Fees***") on a monthly basis. The Bank Fees total approximately $650.00 per month. The Debtors estimate that approximately $325 in prepetition Bank Fees have accrued and are unpaid as of the Petition Date. The Debtors seek authority to pay all prepetition Bank Fees and continue paying the Bank Fees in the ordinary course on a postpetition basis, consistent with historical practices.

**B.     Business Forms**

17.     As part of their Cash Management System, the Debtors use various preprinted business forms (the "***Business Forms***") in the ordinary course. To minimize expenses to their estates and avoid confusion during the pendency of these chapter 11 cases, the Debtors request that the Bankruptcy Court authorize the Debtors' continued use of all existing preprinted correspondence and Business Forms (including, without limitation, letterhead, checks and other Business Forms) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new Business Forms. Once the Debtors have exhausted their existing stock of Business Forms, they will ensure that any new Business Forms are clearly labeled "Debtor In Possession" and, with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

**C.     Corporate Credit Cards**

18.     As part of the Cash Management System, the Debtors provide certain field employees (and a small number of office employees) with access to corporate credit cards (the "***Corporate Credit Cards***") maintained through The Home Depot, WEX® Inc., and First National Bank of Omaha to be used for certain limited business expenses on behalf of the Debtors (the "***Corporate Credit Card Program***"). Such limited business expenses

typically include fuel, oil changes, and certain vehicle maintenance costs, as well as other limited general business related expenses incurred while working on certain projects. The Debtors pay the balances that accrue under the Corporate Credit Cards directly to the credit card companies on a monthly basis. The Debtors are solely liable for the amounts charged on the Corporate Credit Cards, with no recourse to the individual employees. The continued use of the Corporate Credit Cards is critical to the Debtors' business operations insofar as it is one of the primary mechanisms by which employee expenses incurred in the ordinary course of employment are efficiently paid.

19. On average, for the twelve months prior to the Petition Date, the Debtors' employees incurred approximately $177,000 per month in the aggregate on account of business expenses charged to the Corporate Credit Cards. The Debtors believe that, as of the Petition Date, approximately $230,234.47 is outstanding on account of prepetition business expenses charged to the Corporate Credit Cards.

20. Out of an abundance of caution, the Debtors seek authorization to continue honoring obligations under the Corporate Credit Cards on a postpetition basis in the ordinary course of business consistent with prepetition practices.

## V. BASIS FOR RELIEF

**A.  Maintaining the Existing Cash Management System Is Necessary to the Debtors' Operations During the Chapter 11 Cases**

21. The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession account for all estate monies required for payment of taxes including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor; and (f) make all disbursements of estate funds by check with a notation

representing the reason for the disbursement. These requirements are intended to provide a clear distinction between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

22. Continuation of the Cash Management System nonetheless should be permitted pursuant to Bankruptcy Code section 363(c)(1), which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without a notice or a hearing." Bankruptcy Courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively simple matter. The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business). In granting such relief, courts recognize that an integrated cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995).

23. It would be onerous, unnecessarily inconvenient, and would fail to produce any realizable benefits to the Debtors' estates to require the Debtors to close all of the Bank Accounts and open new debtor-in-possession accounts. Further, it would be unnecessary and inefficient to require the Debtors to abide by the UST Requirements to establish specific debtor-in-possession accounts for tax payments (including payroll taxes) and to deposit in such accounts sufficient funds to pay any tax liability (when incurred), whether associated with the Debtors' payroll or other tax obligations. The Debtors can pay their tax obligations most efficiently in accordance with their existing practices. Any diversion from the Debtors' existing practices will complicate payment of the Debtors' tax obligations. Further, the U.S. Trustee will have wide latitude to monitor the flow of funds into and out of such accounts. The creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessarily burdensome.

24. Parties in interest will not be harmed by the Debtors' maintenance of their existing Cash Management System because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations except as authorized by the Court. The Debtors will continue to work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval. Maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

25. For these reasons, the Debtors request that the Court authorize the Banks to continue to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. The Debtors further request that the Court order the Banks to receive, process, honor and pay any and all checks, wire transfers, credit card payments, and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, or credit card payments are dated prior to or subsequent to the Petition Date.

26. The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or on a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because the Banks are not in a position to verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

27. Finally, the Debtors request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees, and prepetition amounts owed on account of the Corporate Credit Cards.

**B.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms.**

28.    To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense and unduly burdensome.

**C.    Cause Exists for Waiving the Authorized Depository Requirement of the U.S. Trustee Guidelines**

29.    The *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "***U.S. Trustee Guidelines***") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***").  Chase is an authorized depository under the U.S. Trustee Guidelines, while Stellar is not an authorized depository.

30.    All of the Bank Accounts are maintained at highly rated, financial institutions that are widely recognized as well-capitalized and financially stable.  The principal basis for the exclusion of certain of these financial institutions from the U.S. Trustee Guidelines is location, not financial soundness or stability.  The Debtors believe that Stellar is well-positioned to perform the depository and cash management functions during the Chapter 11 Cases.  Given the scope of the Debtors' operations and cash management requirements, it is not feasible to consolidate all cash activities into the Chase bank accounts.  The Debtors' current Cash Management

System is critical to the ongoing stability of the Debtors' business and transition into chapter 11. Requiring the Debtors to transfer its Cash Management System from the Stellar bank accounts to the Chase bank accounts would place a needless and excessive administrative burden on the Debtors and impose significant, value destructive costs to the Debtors' estates. Accordingly, cause exists to allow the Debtors to continue using the existing Stellar bank accounts consistent with historical practices. The Debtors will work in good faith with the U.S. Trustee to address any concerns regarding the continued use of these accounts on a postpetition basis. The present circumstances this warrant a waiver of the U.S. Trustee Guidelines regarding Approved Depositories in these chapter 11 cases.

**D.     Cause Exists for Waiving the Investment and Deposit Guidelines of Bankruptcy Code Section 345.**

31.     Section 345(a) authorizes a debtor-in-possession to make deposits of estate money in a manner as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," § 345(b) requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31." 11 U.S.C. § 345(b).

32.     The Court has discretion to waive the requirements of § 345(b) "for cause." 11 U.S.C. § 345(b). In *In re Service Merchandise Co., Inc.*, the court indicated that the existence of "cause" should be determined based upon the totality of the circumstances taking account of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business; (iii) the amount of investments involved; (iv) the ratings of the financial institutions at which the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business to ensure the safety of funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to

the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the § 345(b) requirements in light of the overall circumstances of the case. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

33. The Debtors submit that cause exists to modify the requirements of § 345(b) because the Debtors are sophisticated entities with a Cash Management System that relies on the Bank Accounts on a daily basis. As noted above, all of the Debtors' Bank Accounts are held at stable financial institutions that are insured by the FDIC and, thus, the Debtors' funds in such accounts are safe (up to applicable FDIC limits). Furthermore, in light of the regular deposits to, and disbursements from, the various Bank Accounts, it would be especially disruptive, unnecessary, and wasteful to require the posting of a bond to the extent that the balance of the Bank Accounts exceed the applicable FDIC insurance limits at a given time.

## VI.
## EMERGENCY CONSIDERATION

34. Pursuant to Bankruptcy Local Rule 9013-l(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and the success of the Chapter 11 Cases. As discussed in detail above and in the Anapolsky Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Among other things, continuity of the Cash Management System is critical to the Debtors' ongoing business operations. To require the Debtors to adopt a new cash management system at this early and critical stage would be expensive, impose needless administrative burdens, and cause undue disruption. Any disruption in the collection of funds as currently implemented would jeopardize the Debtors' operations and endanger the Debtors' efforts to reorganize through the Chapter 11 Cases. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of

Bankruptcy Rule 6003 as well as the requirements of Bankruptcy Local Rule 9013-1 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VII.
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

35. To the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b), the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors request in this Motion is immediately necessary for the Debtors to continue to operate their businesses and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VIII.
## RESERVATION OF RIGHTS

36. Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' or any party in interest's rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365; or (vi) a limitation on the Debtors' rights under § 365 to assume or reject any executory contract with any party subject to the proposed Order once entered. Nothing contained in the Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

**IX.**
**NOTICE**

37.  Notice of this Motion will be given to: (i) the United States Trustee for the Southern District of Texas; (ii) the parties included on the Debtors' list of holders of the 30 largest unsecured claims against the Debtors; (iii) counsel to Steller Bancorp., Inc., *f/k/a CommunityBank of Texas*, Jim Doyle (jdoyle@winstead.com); (iv) counsel to Markel Surety Corporation, Christopher Ward (cward@clarkhill.com); (v) counsel to The Hartford, Mike Pipkin (mpipkin@weinrad.com); (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Internal Revenue Service; (viii) the Texas Attorney General; and (ix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required or needed under the circumstances.

**WHEREFORE**, the Debtors respectfully request entry of interim and final orders, substantially in the forms of the Interim and Final Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Dated: April 14, 2023
Houston, Texas

Respectfully submitted,

*/s/ Michael P. Cooley*
Michael P. Cooley (SBN 24034388)
Devan J. Dal Col (SBN 24116244)
Taylre C. Janak (SBN 24122751)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
(469) 680-4200
mpcooley@reedsmith.com
ddalcol@reedsmith.com
tjanak@reedsmith.com

***Proposed* Attorneys for the Debtors**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on April 14, 2023, a true and correct copy of the foregoing document was served via electronic mail (e-mail) or via the Court's Electronic Case Filing (ECF) System upon (i) the Debtors; (ii) the Office of the United States Trustee; (iii) the parties included on the Debtors' list of holders of the 30 largest unsecured claims against the Debtors; (iv) counsel to Steller Bancorp., Inc., *f/k/a CommunityBank of Texas*, Jim Doyle (jdoyle@winstead.com); (v) counsel to Markel Surety Corporation, Christopher Ward (cward@clarkhill.com); (vi) counsel to The Hartford, Mike Pipkin (mpipkin@weinrad.com); (vii) the United States Attorney's Office for the Southern District of Texas; (viii) the Internal Revenue Service; (ix) the Texas Attorney General; (x) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; and (xi) all governmental agencies having a regulatory or statutory interest in this case.

                                              */s/ Michael P. Cooley*
                                              Michael P. Cooley

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                              */s/ Michael P. Cooley*
                                              Michael P. Cooley