**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| P&P Construction Group, LLC, et al., | § Case No. 23-90292 |
| | § |
|     Debtors. | § Joint Administration Requested |

**DEBTORS' <u>EMERGENCY</u> MOTION
FOR ENTRY OF AN ORDER (I) PROHIBITING UTILITY
COMPANIES FROM ALTERING OR DISCONTINUING
SERVICE ON ACCOUNT OF PREPETITION INVOICES,
(II) APPROVING DEPOSIT AS ADEQUATE ASSURANCE
OF PAYMENT, AND (III) ESTABLISHING PROCEDURES
FOR RESOLVING REQUESTS BY UTILITY COMPANIES
<u>FOR ADDITIONAL ASSURANCE OF PAYMENT</u>**

> **Emergency relief has been requested. Relief is requested not later than April 17, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 17, at 11:00 a.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete the appearance.**

Page 1

The above-captioned debtors[1] and debtors in possession (collectively, the "***Debtors***") respectfully state the following in support of this emergency motion (the "***Motion***"):

## I.
## RELIEF REQUESTED

1. By this Motion, the Debtors request entry of an order (the "***Order***"), substantially in the form attached hereto:

 (a) approving procedures that would provide adequate assurance of payment to their utility service providers (the "***Utility Companies***") under § 366, while allowing the Debtors to avoid the threat of imminent termination of electricity, internet, waste removal services, and telecommunications products and services (collectively, the "***Utility Services***") by the Utility Companies;[2]

 (b) approving the Debtors' deposit of $12,040 (which is approximately 50% of the estimated monthly cost of the Utility Services based on historical averages over the preceding twelve months) into a segregated, non-interest-bearing account, as adequate assurance of postpetition payment to the Utility Companies pursuant to § 366(b);

 (c) approving the additional adequate assurance procedures described below as the method for resolving disputes regarding adequate assurance of payment to the Utility Companies; and

 (d) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are P&P Construction Group, LLC (4071), and BRH-Garver Construction, LLC (8315). The Debtors' address is 7600 S. Santa Fe, Building D, Houston, TX 77061.

[2] Subject to paragraph 17 below, a list of the Utility Companies that provide Utility Services to the Debtors is attached to the proposed Order as Exhibit A (the "***Utility Company List***").

against, the Debtors except as may be permitted by the proposed procedures.

## II.
## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion. 28 U.S.C. §§ 157, 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is §§ 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**"),[3] Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

## III.
## BACKGROUND

4. BRH-Garver Construction, LLC ("**Garver**") is a civil contractor headquartered in Houston, Texas, focused on micro-tunneling (or trenchless excavation) and related infrastructure projects to public and private projects as well as related service competencies to other areas of site/civil construction. Garver owns and operates a large fleet of equipment and has an in-house fabrication facility that manufactures tools and equipment for specialty projects.

5. The Garver Business was historically a profitable one. In 2021, for example, the audited financials of the business showed that it generated approximately $4 million in net income and more than $6 million in EBITDA on stated revenues of more than $61 million.

6. In 2022, however, the Debtors sustained significant losses on two projects, one of which was bonded by the Hartford Fire Insurance Company ("**Hartford**"). By February 2023, Hartford had issued "hold funds"

---

[3] Unless otherwise noted, section (§) references are to the Bankruptcy Code.

letters to the counterparties under certain of the Debtors' job contracts requesting that the respective owners release no further contract balances to the Debtors without Hartford's prior written consent.

7. Shortly thereafter, the Debtors' other bonding company, Markel Insurance Company ("**Markel**," and collectively with Hartford, the "**Sureties**") issued "hold funds" letters of its own, and the Debtors' prepetition senior secured lender, Stellar Bancorp Inc. ("**Stellar**"), accelerated the Debtors' prepetition secured loans and sent letters to project owners directing them to remit any further progress payments or retainage directly to the Prepetition Lender. Shortly thereafter, the Prepetition Lender froze the Debtors' bank accounts.

8. The collective effect of these actions was to deprive the Debtors of access to any cash whatsoever except for some limited amounts that the Sureties funded for the weeks of April 3 and April 10, 2023 for payroll and certain vendor payments. Unable to access any of the funds that would ordinarily be available to fund the Debtors' ordinary operating expenses, including critical items like payroll and utilities, on April 12, 2023 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as a debtors-in-possession pursuant to §§ 1107 and 1108.

9. A detailed description of the Debtors' business, capital structure, and events leading to these chapter 11 cases is fully set forth in the *Declaration of Jeffrey Anapolsky* (the "**Anapolsky Declaration**") and is incorporated herein by reference.

## IV.
## BASIS FOR RELIEF

### A. The Debtors' Utility Companies

10. As of the Petition Date, 10 Utility Companies provide Utility Services to the Debtors at various locations.[4] The Utility Companies service the Debtors' corporate offices and operations and their micro-tunneling operations. On average, in the twelve months prior to the Petition Date, the Debtors incurred expenses totaling approximately $24,080 per month for utility costs and such utility costs were generally timely paid. Based on the timing of the filings of these chapter 11 cases in relation to the Utility Companies' billing cycles, however, there may be outstanding invoices reflecting prepetition utility costs that have been incurred by the Debtors but for which payment is not yet due, as well as prepetition utility costs for services provided to the Debtors since the end of the last billing cycle that have not yet been invoiced.

11. The success and smooth operation of the Debtors' businesses depend on the reliable delivery of electricity, internet, waste removal, and telecommunications services. Uninterrupted Utility Services are, therefore, essential to the Debtors' ongoing operations and, accordingly, the success of the Chapter 11 Cases. Indeed, if the Utility Companies refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and the Debtors could be forced to temporarily cease operations, which would negatively impact recoveries for creditors of the Debtors' estates.

12. In general, the Debtors have established satisfactory payment histories with the Utility Companies and payments have been made on a regular and timely basis. To the best of the Debtors' knowledge, there are no material defaults or arrearages with respect to invoices for prepetition Utility Services as of the Petition Date. The Debtors intend to pay postpetition

---

[4] The Debtors obtain certain utility services (such as water and waste removal) pursuant to their property leases. The providers of such services are paid by the Debtors' landlords and thus are not included as "Utility Companies" in this Motion.

obligations to the Utility Companies in the ordinary course and in a timely fashion. The Debtors have budgeted for the payments and believe that cash on hand and cash generated through operations will be sufficient to satisfy their obligations to the Utility Companies in the ordinary course on a postpetition basis.

B.      **The Adequate Assurance Deposit**

13.     The Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner. Nevertheless, to provide additional assurance of payment for future services to the Utility Companies, the Debtors propose to deposit $12,040, which is an amount equal to approximately 50% of the estimated monthly cost of the Utility Services, calculated based on the Debtors' average expenses for such Utility Services during the twelve full months preceding the Petition Date (the "***Adequate Assurance Deposit***"), into a segregated, non-interest-bearing account (the "***Adequate Assurance Account***") within twenty days of the Petition Date. The Adequate Assurance Deposit will be maintained in at least such amount during these chapter 11 cases unless otherwise adjusted as provided for herein.

14.     The Debtors propose that the Adequate Assurance Deposit may be adjusted or reduced by the Debtors to account for any of the following: (i) to the extent that the Adequate Assurance Deposit includes any amount on account of a company that the Debtors subsequently determine is not a "utility" within the meaning of § 366, (ii) an adjustment or payment made in accordance with the Delinquency Notice Procedures described below, (iii) the termination of a Utility Service by a Debtor regardless of any Additional Adequate Assurance Request (as defined below), (iv) the closure of a utility account with a Utility Company for which funds have been contributed for the Adequate Assurance Deposit, or (v) any other arrangements with respect to adequate assurance of payment reached by a Debtor with individual Utility Companies; provided that, (a) with respect to a company that the Debtors subsequently determine is not a "utility" within the meaning of § 366, the Debtors may adjust and/or amend the balance of the Adequate Assurance

Deposit upon fourteen days' advance notice to such company; and (b) with respect to the Debtors' termination of a Utility Service or closure of a utility account with a Utility Company, the Debtors may adjust or amend the balance of the Adequate Assurance Deposit upon reconciliation and payment by the Debtors of such Utility Company's final invoice in accordance with applicable nonbankruptcy law, to the extent that there are no outstanding disputes related to postpetition payments due.

15. The Debtors further propose that, to the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall be permitted to file a written notice of such delinquency (the "***Delinquency Notice***") with the Court and serve such Delinquency Notice on: (i) BRH-Garver Construction, LLC, 7600 S. Santa Fe, Building D, Houston, TX 77061 (email: jeffanapolsky@brhgarver.com); (ii) Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201 (Attn: Michael P. Cooley, mpcooley@reedsmith.com); (iii) counsel to any statutory committee appointed in these cases; and (iv) the United States Trustee for the Southern District of Texas (Attn: Hector Duran, Esq. (email: hector.duran.jr@usdoj.gov)) (each, a "***Delinquency Notice Party***"). Such Delinquency Notice must (i) set forth the amount of the delinquency, (ii) set forth the location for which Utility Services are provided, and (iii) provide each of the Debtors' account numbers with the Utility Company that have become delinquent.

16. The Debtors propose that the following procedures apply with respect to a Delinquency Notice (the "***Delinquency Notice Procedures***"): if a Delinquency Notice is properly provided as described above, and such delinquency is not cured and no Delinquency Notice Party has objected to the Delinquency Notice within ten days of its receipt thereof, the Debtors will be required to (i) remit to such Utility Company from the Adequate Assurance Deposit the amount of postpetition charges claimed as delinquent in the Delinquency Notice and (ii) replenish the Adequate Assurance Deposit for the amount remitted to such Utility Company. If a Delinquency Notice Party objects to the Delinquency Notice, then the Debtors propose that the Court hold a hearing to resolve the dispute and determine whether a payment

should be remitted from the Adequate Assurance Deposit and, if such payment is warranted, the amount to be remitted.

17.  The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business, constitutes sufficient adequate assurance to the Utility Companies. The Debtors shall maintain the Adequate Assurance Deposit as described herein until the earlier of the Court's entry of an order authorizing the return of the Adequate Assurance Deposit to the Debtors and the effective date of a plan of reorganization for the Debtors (at which time the funds comprising the Adequate Assurance Deposit shall automatically, without further order of the Court, be returned to the Debtors or reorganized Debtors, as applicable).

C.  **The Additional Adequate Assurance Procedures**

18.  In the event that any Utility Company requests additional adequate assurance of payment pursuant to § 366(c)(2), the Debtors propose that such request be addressed pursuant to the following procedures (the "*Additional Adequate Assurance Procedures*"):

> (a)  Except as provided by the Additional Adequate Assurance Procedures, the Utility Companies are forbidden to (i) alter, refuse, or discontinue services to, or discriminate against, the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit or due to the commencement of the chapter 11 cases or (ii) require the Debtors to pay a deposit or other security in connection with the provision of postpetition Utility Services, other than the funding of the Adequate Assurance Deposit.
>
> (b)  The Debtors will serve a copy of this Motion and the Order granting the relief requested herein on each Utility Company identified on the Utility Company List within three business days after entry of the Order by the Court.

(c)     The funds in the Adequate Assurance Account shall constitute adequate assurance for each Utility Company in the amounts set forth for such Utility Company in the column labeled "Adequate Assurance Deposit" on the Utility Company List.

(d)     In the event that a Utility Company asserts that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by § 366(c)(2), that Utility Company must serve a written request (an "***Additional Adequate Assurance Request***") for adequate assurance in addition to or in lieu of its rights in the Adequate Assurance Deposit. All Additional Adequate Assurance Requests shall be delivered by mail and email to the Delinquency Notice Parties.

(e)     Any Additional Adequate Assurance Request must (i) set forth the location(s) for which Utility Services are provided and the type of Utility Services provided, (ii) set forth the account number(s) for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposit(s) or other security currently held by the requesting Utility Company, (iv) set forth why the Utility Company believes the proposed adequate assurance is not sufficient adequate assurance of future payment, (v) set forth the amount and nature of the adequate assurance of payment that would be satisfactory to the Utility Company, and (vi) provide an email address to which the Debtors may respond to the Additional Adequate Assurance Request.

(f)     Unless a Utility Company serves an Additional Adequate Assurance Request, such Utility Company shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366; and (ii) subject to (j) below, forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional

Page 9

    adequate assurance of payment other than the Proposed Adequate Assurance.

(g) Upon the Debtors' receipt of an Additional Adequate Assurance Request, the Debtors will promptly negotiate with the Utility Company to resolve the Additional Adequate Assurance Request.

(h) Without further order of the Court, the Debtors may resolve an Additional Adequate Assurance Request by entering into agreements granting additional adequate assurance to the requesting Utility Company if the Debtors, in their sole discretion, determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternative consensual provisions; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in these cases and the U.S. Trustee upon request.

(i) If the Debtors or any of the Delinquency Notice Parties determine that the Additional Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Company within fourteen days after the Additional Adequate Assurance Request is made, the Debtors will request a hearing before this Court at the next omnibus hearing date, or such other date as the Debtors, the Delinquency Notice Parties, and the requesting Utility Company may agree (the "***Determination Hearing***").

(j) Pending resolution at any such Determination Hearing, the Utility Company filing such Additional Adequate Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors, or from discriminating against the Debtors with respect to the provision of Utility Services, on account of unpaid charges for prepetition services, the filing of the Chapter 11 Cases, or any objection to the

    adequacy of the Additional Adequate Assurance Procedures.

(k) The Determination Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Deposit and any additional adequate assurance of payment requested by the Utility Company should be modified pursuant to § 366(c)(3).

(l) All Utility Companies, including Utility Companies subsequently added to the Utility Company List, will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors, or from discriminating against the Debtors with respect to the provision of Utility Services, absent further order of the Court.

## D. Subsequently Identified Utility Companies

19. The Debtors have made a good-faith effort to identify all of their Utility Companies and include them on the Utility Company List. Nevertheless, to the extent that the Debtors subsequently identify additional Utility Companies or Utility Companies that may have been inadvertently omitted from the Utility Company List, the Debtors seek authority, in their sole discretion, to amend the Utility Company List to add any Utility Company. The Debtors further reserve the right to assert that any of the entities now or hereafter listed on the Utility Company List is not a "utility" within the meaning of § 366(a). To the extent that the Debtors subsequently identify any additional Utility Companies that provide Utility Services to them, the Debtors propose to add such Utility Companies to the Utility Company List and to have the terms of any order with respect to this Motion apply to any such Utility Companies. The Debtors will serve on any of the subsequently identified Utility Companies a copy of this Motion and any order entered with respect to the Motion, along with an amended Utility Company List that includes such Utility Company. Additionally, to the extent that the Debtors add any Utility Companies, the Debtors shall increase the amount of the Adequate Assurance Deposit by an amount equal to approximately 50% of the Debtors' estimated average monthly cost of Utility Services from such Utility Company over the preceding twelve months.

20. The Debtors respectfully request that, absent compliance with the Additional Adequate Assurance Procedures, the Utility Companies, including subsequently added Utility Companies, be forbidden from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional adequate assurance of payment other than the proposed Adequate Assurance Deposit described herein. In addition, the Utility Companies should be prohibited from unilaterally applying any payments on account of postpetition services to any outstanding prepetition invoices or drawing upon any existing security deposit, surety bond, or other form of security to secure future payment for Utility Services.

## V.
## APPLICABLE AUTHORITY

21. Section 366 protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) provides a non-exhaustive list of examples for what constitutes "assurance of payment." Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtor's ability to pay. *See In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997); *see also In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2 n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service.") (citing *In re*

Page 12

*Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *3 n.3 (Bankr. S.D. Tex. Mar. 20, 2008)).

22. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Company will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the debtor merely to give further security to suppliers who already are reasonably protected").

23. While a court has discretion in evaluating an adequate assurance proposal, § 366(c) restricts the factors that a court can consider when determining whether such proposal is, in fact, adequate. Specifically, in determining the amount of an adequate assurance deposit, courts may not consider (i) the absence of a security deposit before the debtor's petition date, (ii) the debtor's history of timely payments, or (iii) the availability of an administrative expense priority. *See* 11 U.S.C. § 366(c)(3)(B). Section 366(c), however, does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance.

24. Here, the Utility Companies are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future

Page 13

obligations. Moreover, termination of Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that § 366 "was intended to limit the leverage held by utility companies, not increase it.").

25. Courts are permitted to fashion reasonable procedures, such as the Additional Adequate Assurance Procedures proposed herein, to implement the protections afforded under § 366. *See*, *e.g.*, *In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in [its] efforts to reorganize." *Id*. Here, notwithstanding a determination that the Adequate Assurance Deposit constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under §§ 366(b) and (c)(2) are wholly preserved under the Additional Adequate Assurance Procedures. *Id* at *5–6. The Utility Companies still may choose, in accordance with the Additional Adequate Assurance Procedures, to request modification of the Adequate Assurance Deposit. *Id*. at *6. The Additional Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Company could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *Id.* at *5.

26. Further, the Court possesses the power, under § 105(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Additional Adequate Assurance Procedures and the Adequate Assurance Deposit are necessary and

appropriate to carry out the provisions of the Bankruptcy Code, particularly § 366 thereof. Accordingly, the Court should exercise its powers under §§ 366 and 105(a) and approve both the Additional Adequate Assurance Procedures and the Adequate Assurance Deposit.

27.     By making the Adequate Assurance Deposit and establishing the Additional Adequate Assurance Procedures, the Debtors seek to provide adequate assurance of payment to the Utility Companies and to implement an orderly process to determine any challenges to the adequacy of such adequate assurance. Without the Additional Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by Utility Companies in an unorganized manner at a critical period in these chapter 11 cases. The orderly process contemplated by the Additional Adequate Assurance Procedures, therefore, is necessary for a smooth transition by the Debtors into chapter 11. The relief requested herein does not undermine the rights of the Utility Companies under the Bankruptcy Code. The Debtors anticipate having sufficient liquidity from operations, the proceeds of their debtor in possession financing, and cash on hand to honor their postpetition obligations to the Utility Companies in the ordinary course of business. In addition, the Debtors propose to make the Adequate Assurance Deposit to further bolster the Utility Companies' assurance of payment. The Adequate Assurance Deposit is one of the acceptable forms of assurance of payment set forth in §§ 366(b) and 366(c)(1). Accordingly, the Debtors are not seeking to bypass the limits on forms of security imposed by the Bankruptcy Code. The Debtors further propose to protect the Utility Companies by establishing the Additional Adequate Assurance Procedures. Under these procedures, the Utility Companies may exercise their rights under § 366(c)(2) in a centralized fashion that ensures that requests can be addressed in a timely manner by the Debtors and their counsel without the submission of piecemeal, varied requests to the Court. Finally, whatever rights the Utility Companies have under § 366(c)(3) would be preserved.

28.     The Debtors maintain that the relief requested herein strikes a fair balance between the rights of Utility Companies and the Debtors' rights

under the Bankruptcy Code and need to continue to receive the Utility Services upon which their businesses depend.

## VI.
## EMERGENCY CONSIDERATION

29. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and the success of the Chapter 11 Cases. As discussed in detail above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Failure to receive the applicable relief during the first twenty-one (21) days of the Chapter 11 Cases may result in the disruption of Utility Services to the Debtors, which could hinder the Debtors' ability to operate. In addition, without approval of the streamlined Additional Adequate Assurance Procedures, the Debtors' management and advisors may be forced to dedicate significant time to addressing requests from individual Utility Companies during a critical junction in these Chapter 11 Cases. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 as well as the requirements of Bankruptcy Local Rule 9013-1(i) and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VII.
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

30. To the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b), the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors request in this Motion is immediately necessary for the Debtors to continue to operate their businesses and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice

requirements imposed by Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VIII.
## RESERVATION OF RIGHTS

31. Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' or any party in interest's rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (vi) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the proposed Order once entered. Nothing contained in the Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid. Nothing contained herein shall be construed as an admission that any entity is or is not a Utility Company hereunder or a "utility" under section 366 of the Bankruptcy Code, whether or not such entity is listed on the Utility Company List.

## IX.
## NOTICE

32. Notice of this Motion will be given to: (i) the United States Trustee for the Southern District of Texas; (ii) the parties included on the Debtors' list of holders of the 20 largest unsecured claims against the Debtors; (iii) counsel to Steller Bancorp., Inc., f/k/a CommunityBank of Texas, Jim Doyle (jdoyle@winstead.com); (iv) counsel to Markel Surety Corporation, Chris Ward (cward@clarkhill.com); (v) counsel to The Hartford, Mike Pipkin (mpipkin@weinrad.com); (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Internal Revenue Service; (viii) the Texas Attorney General; and (ix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. In light of the

nature of the relief requested, the Debtors submit that no other or further notice is required or needed under the circumstances.

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: April 14, 2023
      Dallas, Texas

Respectfully submitted,

REED SMITH LLP

*/s/ Michael P. Cooley*
Michael P. Cooley (SBN 24034388)
Taylre C. Janak (SBN 24122751)
Devan J. Dal Col (SBN 24116244)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
(469) 680-4200
mpcooley@reedsmith.com
tjanak@reedsmith.com
ddalcol@reedsmith.com

***Proposed* Attorneys for the Debtors**

## CERTIFICATE OF ACCURACY

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Local Rule 9013-1(i).

*/s/ Michael P. Cooley*
Michael P. Cooley

## CERTIFICATE OF SERVICE

The undersigned certifies that, on April 14, 2023, a true and correct copy of the foregoing document was served via electronic mail (email) or via the Court's Electronic Case Filing (ECF) System upon (i) the United States Trustee for the Southern District of Texas; (ii) the parties included on the Debtors' list of holders of the 30 largest unsecured claims against the Debtors; (iii) counsel to Steller Bancorp., Inc., f/k/a CommunityBank of Texas, Jim Doyle (jdoyle@winstead.com); (iv) counsel to Markel Surety Corporation, Chris Ward (cward@clarkhill.com); (v) counsel to The Hartford, Mike Pipkin (mpipkin@weinrad.com); (vi) the United States Attorney's Office for the Southern District of Texas; (vii) the Internal Revenue Service; (viii) the Texas Attorney General; (ix) the creditors named on the Debtors' Form 204 "20 Largest Creditors List"; (x) those persons who have formally appeared and requested notice and service in these proceedings; and (xi) all governmental agencies having a regulatory or statutory interest in this case.

*/s/ Michael P. Cooley*
Michael P. Cooley